UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

DIANE EUSTACHE,

                    Plaintiff,             **MEMORANDUM & ORDER**
                                        25-CV-1351 (EK)(LGD)
          -against-

NAVY FEDERAL CREDIT UNION,

                    Defendant.

------------------------------------x
ERIC KOMITEE, United States District Judge:

        Plaintiff Diane Eustache brings this negligence, breach of fiduciary duty, and breach of contract suit against defendant Navy Federal Credit Union ("NFCU").  She alleges that NFCU committed these torts when it loaned her $39,000 to buy a car from a fraudulent car dealership, then permitted the dealership's purported owner to escape with the funds.  NFCU moves to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7).  For the following reasons, the motion is granted.[1]

## I.   Background

        The following facts are taken from the complaint and assumed to be true for purposes of this motion.[2]  Around September 2023, Eustache attempted to purchase a 2016 GMC Siera

---

[1] This case was transferred to the undersigned in October 2025.

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

from H.V. Auto Sales.  Compl. ¶ 8, ECF No. 1-1.  To finance the purchase, she obtained a $39,000 loan from NFCU.  *Id.* ¶ 11.

Things went awry.  Simon Hardison, the owner of H.V. Auto Sales, "engaged in unauthorized communications with" NFCU, leading the credit union to wire him the loan proceeds.  *Id.* ¶¶ 16, 18, 19.  With the money in hand, he absconded without giving Eustache the car.  When Eustache visited the dealership in person, she discovered the location of "another car dealership that was out of business."  *Id.* ¶ 22.  As the complaint tells it, H.V. Auto Sales "did not exist" and was "pretending to do business as a legitimate car dealership."  *Id.* ¶¶ 23-24.

That did not stop NFCU from seeking on the loan from Eustache.  *Id.* ¶ 27.  Eustache alleges that NFCU charged her $972.46 in fees and erroneously reported "two different auto loans" to credit bureaus totaling $43,313 and $41,240.  *Id.* ¶¶ 29, 32.  The fallout from the sale damaged Eustache's credit score and her ability to develop a separate start-up venture.  *Id.* ¶¶ 33-34.

Eustache sued in the Supreme Court of New York, Suffolk County.  *See id.* at 2.[3]  She states four causes of action.  The first, titled "bank mishandling funds transfer," claims that NFCU wrongfully released the loan principal to

---

[3] Page numbers in record citations refer to ECF pagination.

Hardison without verifying the authenticity of H.V. Auto Sales. *Id.* ¶¶ 38–43.  The second, dubbed "consumer loan broker acting improperly," alleges that NFCU breached its fiduciary duty to her in doing the same.  *Id.* ¶¶ 44–49.  The third, for breach of contract, attests that NFCU violated the automobile financing agreement by providing Hardison the funds from the loan, continuing to collect on it, and charging her late fees.  *Id.* ¶¶ 50–59.  (The complaint does not attach a copy of the financing agreement.)  The fourth cause of action, for "administrative negligence," argues that NFCU negligently failed to verify that H.V. Auto Sales was a legitimate business or otherwise "settle the situation."  *Id.* ¶¶ 60–65.  Eustache requests treble damages, specific performance forgiving or voiding the loan, and punitive damages.[4]  NFCU removed to this Court and moves to dismiss.

## II.  Discussion

---

[4] Eustache designates her requests for specific performance and punitive damages as separate causes of action.  But specific performance is "an equitable remedy for a breach of contract, rather than a separate cause of action," *Cho v. 401-403 57th St. Realty Corp.*, 752 N.Y.S.2d 55, 57 (App. Div. 1st Dep't 2002), and "there is no separate cause of action in New York for punitive damages," *Martin v. Dickson*, 100 F. App'x 14, 16 (2d Cir. 2004); *see also Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 73-74 (1992) ("Unlike the finding of a cause of action, which authorizes a court to hear a case or controversy, the discretion to award appropriate relief involves no such increase in judicial power.").  Accordingly, the fifth and sixth causes of action are dismissed to the extent Eustache frames them as standalone claims.

The complaint fails to state a claim for relief, so this Court need not address Defendant's Rule 12(b)(7) arguments.[5] To overcome a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013). Plaintiff's claims fall into three categories: breach of fiduciary duty, breach of contract, and negligence. Each gets a turn.

---

[5] While it is a close call, this Court does appear to have subject-matter jurisdiction. A district court may exercise diversity jurisdiction over a state-law dispute "where the matter in controversy exceeds" $75,000. 28 U.S.C. § 1332(a). To remand at this early juncture, it "must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938).

On these pleadings, Eustache's damages request appears inflated. This Court cannot find, and Eustache does not identify, a law entitling her to treble damages under any of her stated causes of action. Compl. ¶ 43. While that ordinarily would leave Eustache with a $39,000 demand, she also requests $5.5 million in punitive damages. But courts evaluate such a request with "heightened scrutiny" when a party uses it to clear the amount-in-controversy threshold. *Nwanza v. Time, Inc.*, 125 F. App'x 346, 349 (2d Cir. 2005). It is at best unclear whether NFCU's behavior evinces the "utter disregard for the safety or rights of others" to warrant punitive damages. *Randi A.J. v. Long Island Surgi-Ctr.*, 842 N.Y.S.2d 558, 564 (App. Div. 2d Dep't 2007).

That said, the complaint also alleges that NFCU's decision to collect on her loan caused her to suffer a "lowered credit score," "higher interest rates," and "unfavorable financing" that hampered her start-up business. Copml. ¶ 33. Because such "[c]onsequential damages" comprise part of Eustache's $5.5 million request, it is not legally certain that the claim is really for $75,000 or less. *Id.* at 12. Accordingly, the Court declines to remand this case.

**A.   Breach of Fiduciary Duty**

Eustache's first and second causes of action, which the parties construe as claims for breach of fiduciary duty, do not plausibly allege that NFCU owed such a duty to her.  Under New York law, a plaintiff asserting a breach of fiduciary duty claim must allege that the defendant (1) owed her such a duty, and (2) breached it.  *Russo v. Banc of Am. Secs., LLC*, No. 5-CV-2922, 2007 WL 1946541, at *8 (S.D.N.Y. June 28, 2007); *Iannuzzi v. Am. Mortg. Network, Inc.*, 727 F. Supp. 2d 125, 137 (E.D.N.Y. 2010).  At issue is the first element.

When two parties enter a fiduciary relationship, "one is under a duty to act for . . . the benefit of another upon matters within the scope of the relation."  *Saul v. Cahan*, 61 N.Y.S.3d 265, 268 (App. Div. 2d Dep't 2017).  The relationship "exists when confidence is reposed on one side and there is resulting superiority and influence on the other."  *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 980 (N.Y. 2009); *WIT Holding Corp. v. Klein*, 724 N.Y.S.2d 66, 68 (App. Div. 2d Dep't 2001); *cf. United States v. Brennan*, 183 F.3d 139, 150 (2d Cir. 1999).  Because fiduciaries are "grounded in a higher level of trust than normally present in the marketplace," *Saul*, 61 N.Y.S.3d at 268, an "arms-length business relationship does not" suffice, *Klein*, 724 N.Y.S.2d at 68.

Relevant here, the debtor-creditor relationship between a credit union and a customer generally does not bind the former as a fiduciary.  *See Fallon v. Wall St. Clearing Co.*, 586 N.Y.S.2d 953, 957 (App. Div. 1st Dep't 1992); *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112, 122 (2d Cir. 1984).  Instead, claims by customers must proceed "under principles of contract law." *Socci v. JPMorgan Chase & Co.*, No. 17-CV-5469, 2018 WL 4388454, at *2 (E.D.N.Y. Sept. 14, 2018).  In practice, courts in New York and in this Circuit routinely hold that "a depositor bringing a cause of action against his or her bank" for failing to protect him or her from third-party theft or fraud "may generally only do so under principles of contract law."  *See, e.g.*, *id.* (suit by inmate against bank for letting other inmates withdraw from his accounts); *Tevdorachvili v. Chase Manhattan Bank*, 103 F. Supp. 2d 632, 640 (E.D.N.Y. 2000) (suit against bank for crediting forged wire transfer); *Fallon*, 586 N.Y.S.2d at 249, 251 (suit by shareholder against clearing company for using already-pledged stock warrants to satisfy margin debt).

Just so here.  Eustache fails to identify special circumstances evincing confidence and trust that would confer fiduciary duties on NFCU.  Indeed, her relationship with NFCU as borrower resembles an arms-length transaction even more than the relationship between depositor and bank — which sometimes holds

6

the deposits as a bailee. *Swan Brewery Co. v. U.S. Tr. Co. of N.Y.*, 832 F. Supp. 714, 717 (S.D.N.Y. 1993). If holding a customer's funds does not confer fiduciary duties upon a bank, then lending Eustache money does not confer fiduciary duties upon NFCU, either. *See also Brennan*, 183 F.3d at 150.

Eustache resists this conclusion. She states that she "reasonably relied on Defendant's representation that Defendant had conducted due diligence on non-party H.V. Auto Sales, LLC," and that Hardison convinced NFCU "to release the funds to himself." Compl. ¶¶ 15-16. But Eustache does not identify which NFCU employee made that representation, nor what the employee told her regarding the "due diligence" conducted. Even then, "mere assertions of trust and confidence" cannot support a fiduciary relationship. *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006). Without identifying the length of the parties' association, NFCU's specific statements to Eustache, or the terms of the arrangement, the Court cannot infer the degree of "superiority and influence" that distinguishes a fiduciary from a business relationship. *Eurycleia Partners*, 910 N.E.2d at 980; *Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P.*, No. 14-CV-2065, 2015 WL 13654007, at *23 (S.D.N.Y. Mar 26, 2015) ("[M]ere allegations that Plaintiff reposed trust and confidence in the Defendants are insufficient to establish a fiduciary duty."). Indeed,

Eustache's contention that she was "a customer of NFCU" who alerted it of fraud suggests precisely the kind of business-customer relationship that does not create fiduciary duties. Pl.'s Mem. in Opp'n to Mot. to Dismiss ("Pl.'s Br.") 11, ECF No. 17-2.  Accordingly, Plaintiff fails to state a claim for breach of fiduciary duty.

**B.    Breach of Contract**

Eustache also falls short in her allegation of breach of contract.  Under New York law, a plaintiff must establish "(1) the existence of a contract between [her]self and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).  Complicating this analysis, Eustache does not attach a copy of the contract or quote the ostensibly relevant provisions.  While the absence of a contract is not fatal, it is still incumbent upon the plaintiff to identify "the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated."  *Sirohi v. Trs. of Columbia Univ.*, 162 F.3d 1148, 1998 WL 642463, at *2 (2d Cir. 1998) (unpublished table decision); *Santos v. Kimmel*, 154 F.4th

30, 35–36 (2d Cir. 2025); *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 322 (E.D.N.Y. 2012).

Eustache has not set forth the essential terms of the contract.  The complaint begins by alleging that the parties entered "an automobile financing agreement" requiring NFCU to "provide Plaintiff with the funds that she sought to be loaned to her."  Compl. ¶¶ 52-53.  But the complaint fails to identify when the parties made the agreement or which NFCU officers made such promises to Eustache.  *See George & Co. v. Spin Master Corp.*, No. 19-CV-4391, 2020 WL 7042665, at *5 (E.D.N.Y. Nov. 30, 2020) (dismissing breach-of-contract claims where plaintiff failed to provide details about formation of contract); *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) (same).

Most importantly, Eustache does not explain *how* the contract obliged NFCU to implement its purported "duty to maintain and safeguard Plaintiff's funds."  Compl. ¶ 17.  For instance, the complaint does not clarify, even with the benefit of all plausible inferences, whether the loan's terms required NFCU to give the loaned funds directly to her, or to the dealership on her behalf.  Nor does she clarify whether or how the loan required NFCU to assess if H.V. Auto Sales, LLC, was a *bona fide* merchant.  *See, e.g.*, *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 638, 645 (S.D.N.Y. 2011) (insufficient, in contract action over throttling of internet bandwidth, to allege

9

only that services provider promised "high-speed internet service"); *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 460, 468 (S.D.N.Y. 2016) (insufficient, in contract action over alleged hidden markups by broker in foreign-exchange trades, to allege the presence of markups with "no information about . . . the required essential terms").

Eustache's brief confirms this ambiguity. She argues that the "most basic expectation [of] the loan agreement" required NFCU to "properly transfer the money to the correct entity, on Plaintiff's behalf." Pl.'s Br 13. But that phrase does not clarify whether the "correct entity" was Eustache's NFCU account, H.V. Auto Sales's account, or some *bona fide* automobile seller's account. This Court also cannot tell, without the loan agreement's terms, whether "charging Plaintiff $72.00 monthly in late fees" or reporting the loan to credit bureaus breached the contract. Compl. ¶ 56.

*Zhirzhan v. AGL Industries, Inc.*, on which Eustache relies, is inapposite. In that wage-and-hour dispute between a group of employees and their employer, the complaint alleged that the contract at issue "obligated Defendants to pay Plaintiffs and the Class Members at or above the local prevailing wage rates, including any required supplemental benefits and overtime premiums for hours worked in excess of forty (40) hours per week, eight (8) hours per day, hours worked

10

on Saturday and Sunday and hours worked during the evening."
No. 14-CV-7567, 2015 WL 13742429, at *1 , 16 (E.D.N.Y. Sept. 15,
2015).  The court held that the plaintiffs adequately provided
the defendants sufficient notice of the terms of the disputed
contract provisions in that complaint.  *Id.* at *16.  Eustache's
allegations in this complaint do not.

**C.    Negligence**

        Eustache fails to plead a plausible claim for
"administrative negligence."  Compl. ¶¶ 60-65.  To state a
negligence claim in New York, "a plaintiff must demonstrate
(1) a duty owed by the defendant to the plaintiff, (2) a breach
thereof, and (3) injury proximately resulting therefrom."
*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006)
(quoting *Solomon ex rel. Solomon v. City of New York*, 489 N.E.2d
1294, 1294-95 (N.Y. 1985)).  The parties dispute whether New
York recognizes a negligence claim when a creditor fails to
properly prevent the fraudulent transaction at issue.

        Eustache fails to allege a negligence claim.  "There
is no cause of action in the State of New York sounding in
negligent prosecution or investigation."  *Coleman v. Corp. Loss
Prevention Assocs., Inc.*, 724 N.Y.S.2d 321, 322 (App. Div. 2d
Dep't 2001).  And courts in this Circuit routinely conclude, in
the separate context of negligence suits by customers against
banks for authorizing payments to scammers, that banks "do not

owe a duty to their customers outside of their contractual arrangements." *McCarthy v. JP Morgan Chase Bank*, 772 F. Supp. 3d 298, 313–15 (E.D.N.Y. 2025); *e.g.*, *Serengeti Express, LLC v. JP Morgan Chase Bank, N.A.*, No. 19-CV-5487, 2020 WL 2216661, at *3 (S.D.N.Y. May 7, 2020); *Socci*, 2018 WL 4388454, at *3; *Blum v Citibank, NA*, 81 N.Y.S.3d 51 (App. Div. 2d Dep't 2018).  So too here, where the loan agreement establishes a "contractual" relationship — rather than an independent duty enforceable in a negligence suit.  *Serengeti*, 2020 WL 2216661, at *4.

This conclusion coheres with how tort and contract interact generally under New York law.  A defendant acts negligently if it breaches "a duty of reasonable care distinct from its contractual obligations."  *N.Y. Univ. v. Cont'l Ins.*, 662 N.E.2d 763, 767 (N.Y. 1995).  Such a duty — here, to safeguard funds already governed by a loan agreement — "does not arise out of an ordinary arm's length business transaction." *See MBIA Ins. v. Countrywide Home Loans, Inc.*, 928 N.Y.S.2d 229, 235 (App. Div. 1st Dep't 2011).  To be sure, exceptions exist: courts may find "a duty of reasonable care in" performing a "contractual obligation" if such a duty would further a particular "public interest."  *Cont'l Ins.*, 662 N.E.2d at 767; *see, e.g.*, *Sommer v. Fed. Signal Corp.*, 593 N.E.2d 1365, 1370 (N.Y. 1992) (duty to competently deliver fire detection system in skyscraper given safety concerns involved).

But no such specific interest is present here, and courts decline to find a generalized interest in keeping promises.  So a party who "essentially seek[s] enforcement of the bargain" must proceed in contract.  *Sommer*, 593 N.E.2d at 1369.  Doing so prevents "the encroachment of tort law" and "protects parties' ability to allocate risk by mutual agreement."  *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 505 (S.D.N.Y. 2013).  Just so here.

It is true, as Eustache notes, that a bank might owe customers a duty to refrain from diverting funds from fiduciary-managed accounts knowingly or with notice.  *Lerner*, 459 F.3d at 287-88.  But for the foregoing reasons, Eustache has not alleged facts showing that NFCU was her fiduciary.  Nor does the complaint allege — at all, let alone plausibly — that NFCU knew the true nature of H.V. Auto Sales.  Accordingly, Eustache fails to allege a viable negligence claim.

## III. Conclusion

NFCU's motion to dismiss is granted.  Eustache's claims are dismissed without prejudice, with leave to amend. Eustache may file an amended complaint that addresses the shortcomings described above within 30 days.  *See Khodeir v. Sayyed*, 323 F.R.D. 193, 197 (S.D.N.Y. 2017).  If Eustache does

13

not file an amended complaint within 30 days, this Court will enter judgment dismissing the case for failure to state a claim.

SO ORDERED.


        /s/ Eric Komitee
ERIC KOMITEE
United States District Judge


Dated:     March 13, 2026
           Brooklyn, New York

14